## REILLY *et al. v.* LEE.

*(Supreme Court, General Term, First Department.* November 13, 1891.)

1. TRIAL—DIRECTING VERDICT—WAIVER OF JURY.

Defendant's counsel moved to dismiss the case at the close of the evidence, and plaintiffs' counsel asked the court to direct a verdict, which last motion the court granted. *Held,* that the jury was thereby waived, and all questions of fact were submitted to the court, whose decision, if supported by the evidence, was final.

2. SECONDARY EVIDENCE—COPIES—NOTICE TO PRODUCE ORIGINAL.

Plaintiffs contracted to do certain railroad bridge masonry, to be paid for on final estimates of the engineers in charge of the road. Plaintiffs offered in evidence a copy, instead of the original, of such final estimates, which copy was shown by the testimony of the engineer, who made the original, to be in his handwriting, and made after the work had been approved and accepted by him. There was no evidence that defendant had ever received the original which he was notified to produce. *Held,* that the court erred in admitting the copy.

3. CONTRACTS—CONSTRUCTION—"ENGINEERS IN CHARGE."

Plaintiffs contracted to do certain railroad bridge masonry, to be paid for on final estimates of the "engineers in charge" of the railroad. *Held,* that "engineers in charge" meant the engineers in charge of the entire road, and not one in charge of the specific masonry in question, whose decision was subject to the approval of the engineers in chief.

Appeal from circuit court, New York county.

Action by Thomas W. Reilly and John O'Connor against John R. Lee. From a judgment entered on a verdict of a jury, rendered by direction of the court, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and DANIELS and INGRAHAM, JJ.

*Smith, Bowman & Close,* (*Artemus B. Smith,* of counsel,) for appellant. *Kellogg, Rose & Smith,* (*L. Laflin Kellogg,* of counsel,) for respondents.

VAN BRUNT, P. J. Although various causes of action were set out in the complaint, upon this appeal only the questions involved in the trial of the issues upon the first cause of action and the defendant's counter-claim are brought up for review. The complaint alleges that the plaintiffs were co-partners in the firm of Reilly & O'Connor, and that in June, 1889, they entered into a contract with the defendant, whereby they agreed to execute, construct, and finish all the masonry work required to be done by the said defendant for the bridge to be constructed by the Pennsylvania, Poughkeepsie & Boston Railroad Company across the Lehigh river at or near Slatington, Pa., for which the defendant agreed to make certain payments to them; that they entered upon the performance of this work, and carried out said contract in the manner and form in all respects as therein provided. The complaint further alleges that it was provided by the contract that when the work required to be done thereunder should have been completed, and the engineer in charge of the work have so certified, and made his estimate of the amount of work performed thereunder, the defendant should pay to the plaintiffs, within 20 days, the sum due to these plaintiffs under said contract. It was then alleged that the work had been fully performed and finished, and the engineer in charge of the work under said contract, more than 20 days before the commencement of the action, had certified that said work was completed, and had estimated the amount of the work done and money earned and due thereunder; that, according to the prices named in said contract, there was a certain sum due for the work done, of which a balance remains unpaid, which is sought to be recovered in said first cause of action. The defendant, by his answer, admitted the contract, denied its performance, and

denied that the engineer in charge of the work at any time truly or correctly certified that said work was completed, or had truly or correctly estimated the work done or the moneys earned or due thereunder, and alleged that, on the contrary thereof, the amount of work actually done and the money due or earned thereunder was much less than the amount which the pretended certificate the plaintiff obtained from some alleged engineer of the railroad company mentioned set forth, and was much less than the total amount claimed in the complaint, and was not in fact greater in amount or value than the sums of money which the defendant had already paid to the plaintiffs therefor. The plaintiffs, to maintain the issues upon their part, intro-, duced the contract between themselves and the defendant. This contract, so far as it is material for the consideration of the questions involved in this appeal, was as follows: "These articles of agreement, made this sixth day of June, 1889, by and between John R. Lee, of Paterson, N. J., party of the first part, and T. Wallace Reilly and O'Connor, party of the second part, witnesseth, that the second party, for and in consideration of the covenants, stipulations, and agreements hereinafter mentioned, promises and agrees to execute, construct, and finish in every respect, in the most substantial and workmanlike manner, and to the satisfaction and acceptance of the engineer or engineers in charge of the Pennsylvania, Poughkeepsie and Boston Railroad Company, all the masonry work required to be done by the first party for the bridge to be constructed by it across the Lehigh river, at or near Slatington, Pennsylvania." The second paragraph of said contract is as follows: "*Second,* The party of the first part shall have the right at any time, in case the force employed upon such work shall be considered by the engineer or engineers in charge of the railroad company as inadequate to complete any protion of the whole of said work within the time herein specified, to employ and put upon the work such additional force as he or they shall consider requisite." The fifth and sixth paragraphs of said contract are as follows: "*Fifth.* It is mutually agreed between the parties hereto that, if the second party shall execute any part of such work defectively, then such defective work shall be rebuilt at the expense of the party of the second part upon receiving the order from the engineer or engineers in charge to that effect. *Sixth.* And the said first party (in consideration of the fulfillment and performance of all the stipulations contained in this contract, to be by said second party fulfilled and performed, and whenever said work shall have been, in the opinion of the said engineer or engineers in charge, completely finished in every respect, and performed agreeably to the various stipulations and specifications in this agreement, and said engineer or engineers in charge shall have furnished to said first party a certificate to that effect, under his hand, together with his estimates of the quantity of the various kinds of work done by the second party under this agreement, which estimate shall be final and conclusive between the parties hereto) will pay to the second party, at the office of the Pennsylvania, Poughkeepsie and Boston Railroad Company, in the city of New York, within twenty days after said certificate and estimate shall have been furnished by the said engineer or engineers in charge, the sum which may be due under this contract, agreeably to such estimate." Here follow the prices charged.

One of the plaintiffs then testified that 20 or 30 days after the work was finished he asked the defendant if he had his certificate, and that the defendant replied that he had received the final certificate and estimate for the Slatington bridge, and that that was the only one he had received. He said he had been doing a good deal of grading, and that he could not pay the plaintiffs finally on this work, but would give $2,000 on account, and would pay the balance very soon,—within a week or two, in that neighborhood, or as soon as he got his affairs in shape. He further testified that about the same time he received from the defendant a statement of account, which he produced, in the hand-

writing of the defendant's clerk, showing the amount of work done on the Slatington bridge, as certified to by the engineer. He further testified that they built the piers and did all the masonry work according to the specifications and under the personal direction of the engineer in charge of the work, Mr. John Schafer, of Newark, N. J., and that he was the engineer for the railroad company. The plaintiff further testified that a Mr. Primrose was the chief engineer of the Pennsylvania, Poughkeepsie & Boston Railroad Company, and also offered in evidence final estimates approved by Mr. Primrose as chief engineer. It was claimed at the time of the introduction of this evidence, by the defendant's counsel, that this was an estimate, and not a final certificate, as required by the contract. The plaintiffs also introduced in evidence a copy of the final estimate, approved by Mr. Schafer as engineer in charge, and delivered to the plaintiffs, which evidence was duly objected to by the defendant, and the exception taken to its admission. Mr. Schafer testified that at the time he put on the word "approved" the entire work as done had been approved by him, from time to time, during the construction. The defendant, at the close of the plaintiffs' case, moved to dismiss the complaint as to the first cause of action upon the ground that it had not been proved as alleged, and that there was no evidence of a final certificate given by the engineer in charge of the Pennsylvania, Poughkeepsie & Boston Railroad by the plaintiffs, as the contract required; and that there was no evidence that any final certificate, showing that the whole work had been done to the satisfaction and acceptance of the engineer or engineers in charge of the railroad company, had been given to the plaintiffs, or produced by them. The court denied the motion, and the defendants excepted. The defendant, upon his behalf, then introduced evidence tending to show that Mr. Primrose was the engineer in charge of the said railroad's work of construction; that he was chief engineer, and that a Mr. Erlandsen had special charge of the bridges in course of construction; and that Mr. Schafer had been placed in charge of the Slatington division of the road as had been testified to by him. This latter item of evidence, however, seems to have been contradicted by other evidence offered upon the part of the defendant; the chief engineer of the railroad testifying that he had charge of this division, but that there was another assistant, who had charge of the masonry of the two bridges, namely, Mr. Erlandsen, who got up the plans of the bridge, and had charge of the masonry; that he was there occasionally, but was not on the work direct; that Mr. Schafer was there all the time, and reported to him; that he went there, and overlooked the work, probably once a week; and that no other person than himself had charge of the work done in connection with the construction of the road for this company. The defendant also offered evidence as to the character of the work done by the plaintiffs under the contract, which was excluded as attacking the certificate upon which the plaintiffs relied. The defendant, upon his examination, denied having stated to one of the plaintiffs that he had received his final certificate from the railroad company; and further testified that he had never received any certificate from the company, or an acceptance of the work, or any part of it.

Upon the termination of the evidence the defendant's counsel renewed his motion to dismiss the complaint as to the first cause of action upon substantially the same grounds hereinbefore mentioned, which motion was denied, and an exception taken. The plaintiffs' counsel asked the court to direct a verdict, which the court granted, to which direction the defendant's counsel duly excepted. It is a well-established rule that where both parties ask for a direction, although the evidence does not entitle the court to make a direction, the effect of the request is to submit the question of fact for determination by the court, and amounts to a waiver of trial by jury. *O'Neill* v. *James*, 43 N. Y. 84; *Dillon* v. *Cockcroft*, 90 N. Y. 649; *Stratford* v. *Jones*, 97 N. Y. 589; *Provost* v. *McEncroe*, 102 N. Y. 650, 5 N. E. Rep. 795; *Kirtz* v. *Peck*,

113 N. Y. 222, 21 N. E. Rep. 130. In the case at bar, neither party having requested the court to go to the jury, the questions of fact, if any, were submitted to the court, and its decision is final, if there was evidence to support the direction given; and therefore no claim of error can be founded upon the failure of the court to submit any question to the jury; and, if it were not for the error committed in the admission of Exhibit H in evidence over the objection of the defendant, we think there would have been no ground whatever for disturbing the judgment. But the admission of this paper, under the circumstances developed by the evidence, seems to have been clear error. Mr. Reilly, one of the plaintiffs, testified that he received a paper from Mr. Schafer when they had completed this work. A paper is handed to witness, and he states that it is a copy of a paper he received, and said paper is marked "Exhibit H," for identification. When Schafer is upon the stand, Exhibit H is handed to him, and he testifies that the paper is in his handwriting, and that it is a copy of the final estimate, and the quantities such as were given by him to Mr. Reilly, the plaintiff, and that it was made after the work had been accepted and approved by him. The plaintiffs' counsel offered this paper in evidence, and, notwithstanding the defendant's objection that the original should be produced, and had not been accounted for, the court received the paper in evidence. We think this was error. It is true that a notice to produce had been given by the plaintiffs to the defendant; but there is no evidence that any such paper had ever been received by the defendant, the testimony of Schafer being that the paper was given to Reilly, and the testimony of Reilly being that he received the original from Schafer, and there is no evidence that it was ever given to the defendant. Consequently the notice to the defendant to produce could form no basis for the introduction of this copy in evidence. The introduction of this paper cannot be said to have been harmless to the defendant, inasmuch as it would seem that the court may have directed a verdict because the making out of the paper of which Exhibit H was a copy was a compliance with the requirements of the contract in reference to the certificate to be furnished by the engineer or engineers in charge in respect to the completion of the work. In fact, the whole decision of the court below may have been based upon this copy of a paper, the original of which was unaccounted for.

This error, as far as the final result of this appeal is concerned, renders it unnecessary to consider the question as to whether the certificate by Schafer is the certificate called for by the contract. But, as passing over this question upon this appeal might lead the trial court upon a new trial to an erroneous conclusion as to the views of the court upon this point, it is proper that we should present one or two considerations which lead us to the conclusion that Schafer's certificate, even if the original had been produced, would not have been a compliance with the requirements of the contract. We think that the recital by which the contract is commenced indicates clearly who is meant by the engineer or engineers in charge, as the phrase is used in the sixth clause of the contract, which clause relates, among other things, to the final certificate. The contract commences as follows: "These articles of agreement, * * * witnesseth that the second party," (the plaintiffs) "for and in consideration of the covenants, stipulations, and agreements hereinafter mentioned, promises and agrees to execute, construct, and finish in every respect, in the most substantial and workman-like manner, and to the satisfaction and acceptance of the engineer or engineers in charge of the Pennsylvania, Poughkeepsie & Boston Railroad Company, all the masonry work required to be done by the first party," (the defendant,) etc., clearly showing that it was the intention of the parties that the work should be done to the satisfaction and acceptance of the engineer in charge of the railroad company; and the object of making the contract in this form is apparent, because the work was being done for the railroad company, the plaintiffs being

subcontractors; and the question of the defendant being entitled to pay from his principal depended upon the acceptance by the railroad company of the work done by him. That by "engineers in charge" the engineer or engineers in charge of the railroad was meant is also evidenced by the second clause of the contract, whereby the defendant was given the right at any time, in case the force employed upon the work mentioned in the contract should be considered by the engineer in charge of the railroad as inadequate to complete any portion of the whole of said work within the time specified, to employ such additional force as he or they should consider requisite. Thus it would seem that the engineer in charge of the railroad company was the one who was to direct the method of the doing of this work, and it is to his satisfaction and acceptance that the work is to be done. Therefore, when, in the sixth clause, the final certificate is spoken of, and the work is there required to be done to the satisfaction of said engineer or engineers in charge, it evidently refers to the engineer or engineers in charge of the railroad company, they being the only engineers who had been theretofore mentioned. This seems to be the clear meaning of the contract, and, as Mr. Schafer was not the engineer in charge of the railroad company, his certificate, even if given, was not a compliance with the contract. The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

INGRAHAM, J. I concur with the presiding justice that Primrose, who was the engineer in the charge of the road, and who was to determine when the plaintiffs had performed their contract, was the engineer who was to give the certificate which was a condition precedent to the right of the plaintiff to recover; but I think there was no evidence to justify the court in finding that the certificate required by the contract had ever in fact been given. The contract plainly contemplated a certificate that the work that plaintiffs agreed to perform had been "completely finished in every respect and performed agreeably to the various stipulations and specifications in the agreement," and that to entitle plaintiffs to recover they must show that such a certificate had been given by the engineer in charge of the railroad to defendant. That certificate was distinct from either the provisional estimate or the final estimate as to the amount of work done. The estimate simply stated the amount of work done. The certificate that was required was that the work had been performed according to the contract. No such certificate was offered in evidence, and the only evidence that can be said to relate to it is the statement of the plaintiff "that at the time I saw Mr. Lee he stated that he had this certificate. The work had been finished more than twenty days." What this certificate was to which the witness alluded does not appear. Lee denies having made any such statement, and the testimony of witnesses called by defendant make it clear that no certificate of Primrose had ever been given, and that, as matter of fact, the work had not been completed according to the contract. The finding of the jury that a certificate as required by the contract had been given would, I think, have been clearly against the weight of evidence. I think that upon all the evidence it appears that plaintiffs never complied with their contract, either in doing the work that they had agreed to do, or obtaining the certificate of the engineer of the road that the work had been completely finished and performed agreeably to the stipulations and specifications in the agreement; and the obtaining of such a certificate was a condition precedent to the plaintiff's right to recover. I also concur with the presiding justice that it was error to admit the paper, Exhibit H, in evidence, and that the judgment should be reversed.

DANIELS, J., concurs.